CHARLOTTE HARBACK & others *vs.* THE CITY OF BOSTON.

The city of Boston did not, by *St.* 1846, *c.* 167, acquire the fee of land taken for the construction of the aqueduct from Long Pond, but only such an easement therein as is necessary for the purposes of the waterworks.

PETITION to the court of common pleas, under *St.* 1846, *c.* 167, for damages for land taken by the city of Boston for the construction of the aqueduct from Long Pond. Both parties being dissatisfied with the award of the committee appointed by the court to assess said damages, claimed a trial by jury which was had before *Wells,* C. J. The petitioners contended that the city of Boston became the absolute owner in fee of the land so taken, and that damages should be assessed accordingly ; but the presiding judge instructed the jury that the city acquired only an easement in said land, so far as necessary for the purposes of the aqueduct, and the jury assessed the damages according to such instructions. The petitioners excepted to said instructions.

*S. E. Sewall,* for the petitioners.

*A. H. Nelson,* for the respondents.

SHAW, C. J. The single question presented for the consideration of the court in the present case is, whether by force of the act for supplying the city of Boston with pure water, *St.* 1846, *c.* 167, and for that purpose authorizing the city to take land for the necessary use of the aqueduct and its incidents, the fee of the soil thus taken is vested in the city, or whether the fee remains in the original owners, subject to an easement therein, created by such taking. This depends on the construction of the statute. By section 1 the city of Boston, by the agency of three commissioners, may take, hold, and convey to and through said city, the water of Long Pond, and the waters which flow into it, &c., and any water rights connected therewith ; and also may take and hold, by purchase or otherwise, any lands or real estate necessary for laying or maintaining aqueducts, &c.

By section 6 the city of Boston shall be liable to pay all

damages that shall be sustained by any persons, in their prop-
erty, by the taking of any land, water, or water rights, or by
the constructing of any aqueduct, reservoirs, or other works,
for the purposes of this act.

The efficient words applicable to this question, throughout
the act are, " take," or " take and hold " land, water, or water
rights. Water and water rights, which are here nearly synony-
mous, both indicate incorporeal hereditaments, and therefore
the question does not apply to them. The question is then
narrowed to this; what is the nature of the interest or estate
which passes from the owner to the public, or the grantees of
the public, in land taken by force of this act for public use ?
Is it a fee, or absolute right of domain in the soil for any or
all purposes; or is it a right to that use only, for the time be-
ing, which the public exigencies require ?

We are not prepared to say, that the right of eminent domain,
which is tacitly reserved to every sovereign state, for the highest
purposes of public safety, defence and convenience, is abso-
lutely limited to the taking of an easement, in a case where, in
the judgment of the government, the taking of a fee is necessary
to the accomplishment of the purpose of public safety. The
words of the Declaration of Rights, art. 10, are, " whenever the
public exigencies require that the property of any individual
should be appropriated to public uses, he shall receive a reason-
able compensation therefor." The word " appropriated " is
one of broad and comprehensive import, applicable to personal
as well as real estate ; and in case of personal property, often,
and indeed most generally, must wholly devest the title of the
owner. But though we would not say that under this broad
authority it would not be competent for the legislature to pro-
vide for the transfer of real estate in fee, by which the whole
title of the owner would be devested, still we think the argu-
ment drawn from this provision in the Declaration of Rights,
is a legitimate one, and of some weight. The Declaration of
Rights was intended to secure rights of individual owners,
and prescribe the duty of the legislature ; and a power is given
to provide for an exigency, and is warranted only by the ex-
istence of such exigency; the plain rule of equity is, that it

shall be restrained and limited by the extent of such exigency. When, therefore, the legislature, being vested with the exercise of this high power, use language not precise and explicit, but open to construction, and if one construction would convey the power beyond the limit necessary to meet the public ex igency, and another construction would limit it by the extent of such exigency, we think the latter ought to be adopted, as the one intended by the legislature. According to this rule, if land be taken for a highway, where the benefit to the public commonly consists in the use of the surface, for the pur pose of travelling, with its incidental use for draining, repair, &c., there is no reason why the right of the owner in a valuable spring or mine, or quarry under it, being such as can be profitably enjoyed by the owner, consistently with the entire use of the surface by the public for a highway, should be taken or disturbed.

Such, it is believed, has been the uniform rule adopted in Massachusetts, in regard to land taken for highways, turnpikes, canals and railroads. And, indeed, so firmly is this principle fixed, that in case of turnpikes, where in many cases the land would be obtained by purchase, and conveyed to the corporation by deed, yet the sole object of this power being to accomplish the purposes for which these corporations were created and vested with these powers, that it was early provided, that whenever a turnpike road should be discontinued in whole or part, the land should revest in the person or persons, their heirs and assigns, who were owners thereof at the time such land was taken or purchased, for the purpose of making such road, any conveyance of said land to the corporation by deed notwithstanding. *St.* 1804, *c.* 125, § 15. And the same provision is reënacted in Rev. Sts. *c.* 39, § 15. And this, we think, was to some extent a declaratory act, to prevent the ordinary effect of a perfect and complete alienation of the fee, where an estate is purchased, and conveyed by deed to a corporation, vested with a power to take and hold real estate by conveyance.

The general rule is, that the right of the public or of individuals to the use of the land of others, for a precise and defi•

nite purpose, not inconsistent with a general right of property in the owner; this right is, in contemplation of law, an ease-ment or franchise, and not a right of property in the soil, even though it deprive the owner for the time being, of all useful or beneficial interest in the land. *Boston Water Power Company* **v.** *Boston & Worcester Railroad Corporation,* 16 Pick. 522. The general rule in regard to highways is too well estab-lished to require many authorities; the following have a bear-ing on the question, *Commonwealth* v. *Peters,* 2 Mass. 125; *Perley* v. *Chandler,* 6 Mass. 454; *Adams* v. *Emerson,* 6 Pick. 57; *Tucker* v. *Tower,* 9 Pick. 109. So in case of railroads; *Wes-ton* v. *Foster,* 7 Met. 299. Most of the cases cited by the counsel of the complainants, tending to show that turnpike companies or canal companies take a fee in the soil taken for such public use, are cases from other states, wherein the laws under which they act, provide that they shall purchase the land and pay for it, or shall have a fee or absolute right of property. Such cases can afford little or no aid in construing an act of our own legislature.

Then the question is, whether in the case before us, the legislature intimate any design that the city shall take a fee or any larger interest in the lands of others, than in the cases of highways and turnpikes, when land is taken for like pur-poses. In the case of turnpikes, by Rev. Sts. *c.* 39, § 4, it is provided that any corporation may purchase and own the lands over which their road passes; and by § 15, when such road is discontinued, all lands taken shall revest, &c., notwithstanding any such conveyance by deed to the cor-poration.

It appears to us that all purposes of supplying the city of Boston with water could be accomplished by vesting them, through the agency of their commissioners, with power to enter on and use the land of others, without taking an absolute estate in it; that such had been the settled rule and policy in this state for a long course of years, in cases strictly analogous; that the word "take" does not necessarily import the taking of real estate in fee, or by absolute title, but is often used when an easement only is intended, and that the same word is used in

this act in regard to the use of water and water rights, which are incorporeal hereditaments, not susceptible of a legal seizin; and, lastly, the giving a limited right, instead of an absolute one, is most consistent with the just exercise of the right of eminent domain, as given by the Declaration of Rights, and leads to a strong presumption that such was the intent of the legislature in granting to the city of Boston the rights and powers given by this act. The court are therefore of opinion, that by the act in question, and the doings of the commis-sioners under it, the city of Boston took an easement only, and not a fee in the land of the complainants.

*Exceptions overruled.*